**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 10-4039

UNITED STATES OF AMERICA,

Appellant.

v.

HAROLD SIDNEY BRUNSON

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-07-cr-00625-001)
District Judge:  Hon. John P. Fullam

Argued on January 27, 2011

Before:  FUENTES, CHAGARES and ROTH, Circuit Judges

(Opinion filed:  March 3, 2011)

Zane D. Memeger, Esquire
Thomas M. Zaleski, Esquire
Robert Z. Zauzmer, Esquire  **(Argued)**
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA   19106

Counsel for Appellant

Roland B. Jarvis, Sr., Esquire  **(Argued)**
230 South Broad Street, Suite 700
Philadelphia, PA   19102

Counsel for Appellee

————

O P I N I O N

————

**ROTH**, <u>Circuit Judge</u>:

The government, in prosecuting seven robberies committed by Harold Sidney Brunson, brings this interlocutory appeal and petition for writ of mandamus to address errors it contends the District Court committed in ruling on the admissibility of evidence and in instructing the jury on the elements of the relevant offenses.  Grave errors in the rulings of the District Court compel us to grant the petition and direct this case to be reassigned.

## I.  **Background**

Brunson was first indicted on October 2, 2007 for a string of robberies.  The matter was assigned to a long-standing and respected judge, John P. Fullam.  (App 2.) On January 21, 2010, the government filed a fourteen-count superseding indictment, alleging that Brunson and an uncharged individual committed seven armed robberies in Northeast Philadelphia, between August 2006 and April 2007.  (App. 22-37.)  Brunson was charged with seven counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and seven counts of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

2

## A. The Seven Robberies and Their Similarities

The government identified the seven robberies with which Brunson was charged as follows:

1. August 5, 2006, 11:30 p.m.:  Primo's Pizza
2. August 19, 2006, 11:45 p.m.:  Galaxy Pizza
3. September 4, 2006, 2:00 a.m.:  The Ashton Pub
4. April 13, 2007, 2:40 p.m.:  Maxim Hair Studio
5. April 13, 2007, 3:35 p.m.:  Vince's Service Center
6. April 15, 2007, 10:00 p.m.:  Bill's Family Pizza
7. April 19, 2007, 9.30 p.m.:  Alfred's Beverage Corporation

Brunson was arrested while attempting to flee from the scene of the seventh robbery. The following day, police recovered a small silver handgun and vomit near the spot where Brunson was arrested.  Subsequent DNA tests matched the vomit to Brunson. Items taken in the final robbery also were found at this location.  (App. 211-18.)

The government points to several similarities between the seven robberies:  (1) all the robberies were committed by two men; (2) one robber was described as taller with dark skin, and the other (Brunson) as shorter with lighter skin; (3) except in one instance, both held and pointed guns, with one gun described as a small silver handgun (which fit the description of the gun recovered in the area where Brunson was arrested), and the other as a larger black handgun; (4) in nearly every robbery, the victims were ordered to lie on the ground; (5) victims who resisted were typically beaten by the taller robber, and in one instance a victim was shot by Brunson; (6) after ordering those present to lie down, the robbers would take money from the store's cash register and other locations where cash would be held; (7) the robbers would eventually turn to the employees and customers present, searching them for wallets, cellular phones, and jewelry; (8) before

3

leaving, the robbers would order the employees and customers to the back of the store, instructing them to kneel or lie down and to remain on the ground; and (9), the stores targeted were all small independently owned businesses in the general vicinity of Northeast Philadelphia, and nearly all were robbed just before closing time. (App. 60-61.)

The government proffers significant evidence tying these robberies together and Brunson to them all. A shell casing recovered from the first robbery, where an employee of Primo's Pizza was shot in the stomach while attempting to flee, matched the small, silver handgun recovered in the area where Brunson was arrested after the seventh robbery. (App. 61.) Additionally, Brunson also took and held onto items from his victims. When he was arrested for the final and seventh robbery, Brunson was wearing a gold chain taken from one of the victims of the sixth robbery. A subsequent search of Brunson's residence turned up ammunition that matched the small, silver handgun found near where Brunson was arrested, a Social Security card taken from a victim of the fifth robbery, and a cellular phone taken from a victim of the third robbery. (App. 61.)

The government's attempt to proceed with a rather straightforward trial of these connected robberies was unfortunately thwarted by a pattern of unreasonable and largely unexplained rulings by the District Court.

### B. The Severance Decision

The trouble started when the District Court decided *sua sponte* that it would be unfair to try all of Brunson's robberies in a single case. At a hearing on the day Brunson's trial was set to begin, the District Court – for the first time and without

4

prompting from either party – expressed its skepticism that the seven counts for armed robbery in the indictment could be tried in one trial, asking "[h]ow can we possibly try seven different crimes in one trial before the same jury?" (App. 39.) While the government asserted that the robberies were all part of the same series of offenses, Brunson took the hint and moved to sever the counts. The District Court chided Brunson for not moving earlier for separate trials, asking, "[w]hy didn't you file a motion for separate trials for heaven's sake? It seems to me that it inevitably prejudices the jury against the Defendant to know that he's charged with seven different offenses." (App. 40.) The government disagreed with the District Court and insisted that it would be proper to try all seven counts together, as the robberies were all carried out in the same manner, and evidence from all of the robberies is relevant to each count. (App. 40-41.) The government further noted that if the District Court decided to sever the counts, it would file a Rule 404(b) motion to admit evidence from the other counts at trial. (App. 40.)[1] The District Court ultimately ruled that all seven could not be tried together in one trial and gave the government a ten-minute recess to decide which count to try first. (App. 46.)

Following the recess, the government informed the District Court that if it had to choose one robbery to try it would try the robbery underlying the final and seventh count of the indictment: the robbery of Alfred's Beverage Corporation (Alfred's), after which

---

[1] During this exchange, the Court inquired if any discussion had taken place as to a possible trial of one case, and in that case, if the jury were to return a guilty verdict, there would be an agreed upon disposition on the remaining charges. (App. 44-45.) The parties acknowledged that they had not discussed that option and that plea discussions had not been productive. (App. 45.)

Brunson was arrested. (App. 47.) When the government indicated that, in light of the District Court's ruling, it would make a formal Rule 404(b) motion to introduce evidence of the other robberies at the first trial, a heated exchange ensued:

**Government**: In addition, if I was proceeding on one robbery, I would also make a formal 404(b) motion to introduce evidence of the other robberies as well because I think it goes to identity.

**The Court**: No, you would not.

**Government**: I'm sorry?

**The Court**: No, you would not.

**Government**: Well, I have the right to make a motion, Your Honor.

**The Court**: You have the right to make a motion, yes. Did you ever try a case before?

**Government**: Yes, your honor.

**The Court**: Did you ever consider the possibility that the Defendant is entitled to a fair trial?

**Government**: He is absolutely is entitled to a fair trial, and that's what we're giving him in this case.

**The Court**: Then why did you include seven different crimes in one indictment?

**Government**: Because he committed seven different robberies. He actually committed probably more than that, but we charged seven different robberies. We do that all the time, Your Honor. There's nothing unusual about this.

**The Court**: The fact that you do it all the time doesn't make it right.

**Government**: Well, it's certainly allowed under the law.

**The Court**: So what is the situation as we speak? It is now ten after 11:00 on a Monday morning. The case was scheduled to start an hour ago.

**Government**: Your Honor, I will formally move under 404(b) to introduce evidence of the other robberies to show both identity –

**The Court**: And that motion is denied.

**Government**: Okay. Your Honor, then I will –

6

| | |
|---|---|
| **The Court**: | When you file it, it will be denied. |
| **Government**: | Your Honor, then I must inform the Court that we will file a notice of appeal. We have the right to appeal adverse evidentiary decisions at pretrial; and therefore, I think this proceeding cannot go forward. |
| **The Court**: | You're running the risk of having the case dismissed for – under the Speedy Trial Act, you realize. |
| **Government**: | I do not believe that's true because while an appeal is pending, the speedy trial clock is tolled. |
| **The Court**: | Well – |
| **Government**: | And, Your Honor, I have spoken with our appellate supervisor on this. He agrees with me – |
| **The Court**: | I don't care who your appellate supervisor is. We're doing [sic] to try this case is [sic] a manner which is fair to the Defendant, if at all possible. |
| **Government**: | Well, Your Honor, I – let me inform the Court we will file a notice of appeal today and that will automatically stay these proceedings. |
| **The Court**: | At such time that you file it, I will consider whether it has any effect on the current situation. |
| **Government**: | Okay. |
| **The Court**: | As I understand it, the Government is not prepared to proceed. |
| **Government**: | Well, Your Honor, I mean, we're asking for a stay. |
| **The Court**: | A stay of what? |
| **Government**: | So that the appeal may be resolved. |
| **The Court**: | Appeal of what? |
| **Government**: | Appeal of your evidentiary decision under 4 – |
| **The Court**: | Where on earth did you get the idea you can do that? |
| **Government**: | The Government has the right to appeal pretrial evidentiary decisions. |
| **The Court**: | Well, first of all, you haven't filed any motion that I'm aware of. |
| **Government**: | Well, I – I – |
| **The Court**: | You said you were going – |

7

| | |
|---|---|
| **Government**: | -- filed – I'm sorry, Your Honor. |
| **The Court**: | An oral motion? |
| **Government**: | Yes. There was no severance motion filed either. |
| **The Court**: | Pardon? |
| **Government**: | There was no severance motion filed either. |
| **The Court**: | No. I'm granting the severance. I would recess for another ten minutes and suggest that you'd better be ready to proceed with at least one count in this indictment by the end of that period. Either that or file something which makes sense, which I can rely upon to see whether there's possibly an appealable order, which I doubt. Ten minute recess while you decide what you're going to do before I throw the whole case out if you're not careful. |

(App. 47-51.)

When the District Court reconvened, the interim United States Attorney for the Eastern District of Pennsylvania, Michael Levy, appeared on behalf of the government. (App. 51-52.) Since no formal severance motion had been filed, Mr. Levy requested an opportunity to brief the issue of severance. The District Court granted Mr. Levy's request and continued the case for a week. (App. 53.)

On February 4, 2010, the government submitted a written opposition to severance. (App. 57-73.) The government argued that the multiple offenses were properly joined under Federal Rule of Criminal Procedure 8(a), and that there was insufficient justification to sever the counts in the superseding indictment pursuant to Federal Rule of Criminal Procedure 14(a). (App. 62.) To support its argument, the government cited the Third Circuit Model Jury Instructions addressing multiple criminal counts for the same defendant, noted that there have been hundreds of indictments in which defendants have

8

been charged with multiple robberies, and stated that it was not aware of any case in which multiple robbery counts were severed as to the same defendant. (App. 65-68.) In the alternative that the counts were severed, the government requested that evidence relating to the other robberies be admitted at each of the individual trials pursuant to Federal Rule of Evidence 404(b). (App. 68-72.) Brunson filed a response to the government's opposition. To support severance of the counts, Brunson cited primarily the prejudice that would result from a "spillover effect" and disputed the connection or similarities between the counts. (App. 74-76.)

On February 8, 2010, the parties returned to court. The District Court asked the government which count it wished to proceed with first. The government then indicated that it would try the last of Brunson's alleged robberies, the robbery of Alfred's, but inquired into the status of its motion opposing severance. (App. 81.) The District Court responded, "I've already ruled twice, at least, I don't have to chew my cabbage that many times. I said that the government could decide which case they wanted to proceed with, but we would sever it – the cases." (App. 81.) The District Court did not explicitly address the government's Rule 404(b) motion, but it did not correct the government's statement that "the evidentiary motion is denied, I assume." (App. 81.)

**C. First Trial**

That same day, the parties selected a jury and began trial. The government presented evidence of the Alfred's robbery that was consistent with the identity and plan of the robberies described above but no evidence of the other robberies was admitted. (*See, e.g.*, App. 106-21, 132-49.) Two men, one described as taller and black and the

9

other as Hispanic, entered Alfred's shortly before 10:00 p.m. Both wore hooded jackets with the hoods pulled up. According to the store clerk and his friend, the only two present in the store at the time of the robbery, the robber described as Hispanic (identified as Brunson) had a silver handgun and the robber described as black was armed with a black handgun. (App. 106-11, 133-38.) The black robber demanded money from the store clerk, who turned over money from the register and lottery machine. (App. 134-35.) The Hispanic robber demanded money from the store clerk's friend, who turned over $18. (App. 107-08.) The robbers then forced the two men towards the rear freezer area. (App. 108-09; 135-36.) As he was being forced to the back of the store, the clerk activated a silent alarm that alerted police. (App. 135.) In the back of the store, the robbers forced – at gunpoint – the store clerk and his friend to their knees. The black robber emptied the store clerk's pockets and asked if he knew the combination to the safe. He responded that he did not know, and that only the owner and the manager knew it. (App. 137-39.) The black robber then hit the store clerk in the back of the head with his gun. (App. 110-11; 137-38.) Fearing for his life, the store clerk remembered that there was an envelope with additional cash underneath the register and told the robbers about it. (App. 137-38.) The robbers retrieved the cash. (App. 111.) A police car driving by with the siren on startled the robbers, and the robbers quickly left by the front door. (App. 111.)

Two officers arrived at the store just as Brunson was exiting. (App. 110-11, 134-35.) Officer Kruse was able to grab Brunson briefly and see his face, but Brunson broke away by slipping off his outer layers of clothing. (App. 161-62.) The police recovered

10

Brunson's sweatshirt and found $18 in it. Minutes later, another officer found Brunson hiding behind a vehicle in front of a nearby house. (App. 184-86.) That night, both Officer Kruse and the clerk's friend who was present in the store identified Brunson as one of the robbers. (App. 111-13, 171-72.) The store clerk could not positively identify Brunson as one of the robbers at that time. (App. 144-45.)

The next morning a detective returned to the area where Brunson was arrested and spotted vomit on the ground next to the SUV behind which Brunson was found. (App. 211, 213.) A DNA expert testified that Brunson was the source of this vomit. (App. 245, 248.) The detective looked underneath the SUV and found two black gloves and two envelopes in the engine compartment. (App. 215-216.) One glove contained a loaded, silver .22 caliber semi-automatic handgun, and the other contained cash. (App. 215-216.) An employee of Alfred's identified the envelopes as having been taken from the business. (App. 146-47, 215-16.) The owner of the SUV, who lived at the house in front of which Brunson was arrested, testified that she had never before seen the recovered items. (App. 202-03.)

The jury found Brunson guilty on both counts charged, 18 U.S.C. §§ 924(c), 1951(a). (App. 35-36, 318.) Immediately after the verdict, the District Court called the parties to sidebar and asked the parties if there was any possible way of reaching a plea agreement, even suggesting certain ways the parties could reach an agreement. (App. 319-321.) The parties could not reach an agreement, and Brunson requested a continuance to consider his next move. (App. 321-22.) After unsuccessfully arguing one post-trial motion for judgment of acquittal or new trial and a separate motion

11

challenging five of the remaining indictments, defense counsel for Brunson filed a motion to withdraw as counsel. (App. 18, 325-28.) The motion was granted and present defense counsel was appointed. (App. 19.)

### D. Second Trial

In the second trial, the District Court's pattern of unreasonable decisions reappeared. The government chose for Brunson's second trial the robbery of Vince's Service Center (Counts 9 and 10 of the superseding indictment). Prior to trial, the government filed a motion *in limine* to admit evidence pertaining to Brunson's possession of a firearm in connection with the robbery of Alfred's, the subject of the first trial. (App. 337-43.) The government argued that evidence showing that the same gun was used in all of the robberies was intrinsic evidence demonstrating that Brunson had used a real gun and participated in each of the robberies. (App. 339-340.) As an alternative basis for admission, the government argued that evidence of Brunson's possession of a handgun in the robbery of Alfred's was admissible under Rule 404(b). (App. 341.) In response, Brunson argued that the government sought to "back door" the District Court's previous decision granting severance and that admission under Rule 404(b) would lead to an unfair trial. (App. 346.)

On August 2, 2010, the trial relating to the robbery of Vince's Service Center began. The District Court did not rule on the government's motion *in limine* before trial, waiting until the government pressed the point at a sidebar held after opening statements and some testimony. (App. 423-24.) The government pointed out that defense counsel in his opening statement claimed that no gun was recovered in the present case, thereby

12

opening the door to admission of the fact that a gun was recovered from the seventh robbery.[2] (App. 424). Defense counsel maintained that he had not opened the door because he had stated only that no gun was found during the execution of the search warrant on Brunson's apartment. (App. 424.) Without explanation, the District Court ruled that evidence of the gun's recovery was inadmissible. (App. 425.) Upon prompting from the government, the District Court also directed that Brunson could not proffer evidence that no gun was found during the search of his apartment. (App. 426.) The District Court, however, reversed this decision after testimony from a detective that he recovered .22-caliber ammunition at Brunson's house. (App. 438-40.) After calling counsel to sidebar, the District Court stated to defense counsel, "in view of this testimony, I will change my ruling if you want to get in the absence of the gun. It's all right with me." (App. 441.) In closing, defense counsel pointed out that the jury "didn't hear about a firearm being found in my client's apartment," and that, "if there was a firearm, and [Brunson] was concerned about it being found, . . . it would have been hid . . . with the other items." (App. 506.) (Of course, the gun had been recovered prior to the

---

[2] In his opening, defense counsel stated:

So the Government's going to ask you to find my client in possessing [sic] two firearms, neither of which – excuse me – neither of which was seized in this case, neither of which will be presented to you in this case, none of which you will be able to rely on in terms of establishing that my client was there, that my client possessed a firearm and much less that my client participated in any robbery.

(App. 359).

13

search of Brunson's apartment.)  The government objected and requested a sidebar.  The District Court denied the objection and declined to hold a sidebar.  (App. 506.)

At the end of closing arguments, the District Court instructed the jury without holding a formal charging conference.  (App. 514-17.)   In place of instructing the jury as to all of the elements of the offenses, the District Court gave a condensed jury charge (App. 514-18), shorter than the charge it gave after the first trial (App. 305-12).  The District Court did not instruct the jury as to all elements of the Hobbs Act robbery count (18 U.S.C. § 1951(a)) or use of a firearm in relation to a crime of violence count (18 U.S.C. § 924(c)).  (App. 514-18.)  Among other omissions, the District Court failed to provide any definition for robbery, which is an element pertinent to both counts.  (*Id.*)  The District Court directed the jury as follows:

> This is actually a quite simple case.  There are two charges against the defendant.  One is using a firearm to commit a robbery and the other is aiding and abetting the other alleged robber in interfering with interstate commerce through robbery
> . . . .
> And the issue is was this defendant one of the two men that committed the robbery?  If you accept the testimony of the Government witnesses to the effect that a robbery did take place, then the question is, was this defendant one of the two men who committed it?  And in that regard, you have the evidence which you should analyze very carefully and decide whether it convinces beyond a reasonable doubt.

(App. 515.)

The District Court also stated, "there are two, two crimes charged here, but under the evidence, your verdict has to be the same as to both.  So either the defendant is to be found guilty of both counts or of neither." (App. 517.)   However, the District Court immediately added that, "if you conclude that this defendant was one of the two robbers,

14

then he would be guilty under both counts. But unless you find that beyond a reasonable doubt, you must find him guilty – not guilty on either count." (App. 517.)

The District Court then called a sidebar. (App. 517.) At that time, the government expressed its concern about the District Court's instruction to the jury: "I'm concerned about the instruction that they have to find the same thing on both counts. I think they need to be instructed to the elements separately, and I'll let Mr. Jarvis argue this, but I think they need to be instructed separately on the elements . . . ." (App. 518.) The District Court interrupted, stating, "[t]hey're not going to be," and then proceeded to commit the case to the jury. (App. 518.) Brunson did not object to the jury instructions. (App. 518.) The jury returned a verdict of guilty on both counts. (App. 520.)

## E. The Latest Motion *in Limine*

Shortly before the third scheduled trial, the District Court made clear that it intended to adhere to its previous decisions to exclude evidence from other robberies and to provide informal and incomplete jury instructions. The third trial was scheduled to begin October 12, 2010, on counts three (violation of 18 U.S.C. § 1951(a)) and four (violation of (18 U.S.C. § 924(c)) of the superseding indictment, which related to the robbery of Galaxy Pizza. On September 28, 2010, the government filed a motion *in limine* to admit evidence at the third trial of the robbery of Alfred's (the first trial),[3] and to provide jury instructions on all of the elements of the charged counts. (App. 527, 541-58.)

---

[3]   The government explained in its motion that it "continue[d] to believe that evidence of all of the robberies charged in the indictment is admissible to prove any one . . . ." (App. 542 n.7.)

15

In its motion, the government proffered that the robbery of Galaxy matched in identity and plan the robbery of Alfred's. The Galaxy robbery occurred at 11:45 p.m. Two men, one of whom matched the description of Brunson, entered Galaxy and pointed guns. One of the guns was described as a small silver handgun. The robbers took approximately $2,000 from the cash register as well as cash and personal possessions from the employees. The two robbers forced the employees, at gunpoint, to the rear of the business's back storage area, and then fled the scene. Later, one employee who was present during the robbery identified Brunson in a photo spread as one of the robbers. (App. 541.)

In his written response to the government's motion *in limine*, Brunson argued that "the government is seeking to 'back door' the [c]ourt's previous decisions granting defendant's motion to sever the multiple [c]ount [i]ndictment and denying the admission of Rule 404(b) [e]vidence; attempting to circumvent defendant's constitutional right to a fair trial." (App. 562-63.) Brunson did not contest the government's request for the District Court to instruct the jury on all elements of the charged offenses. (App. 562-64.) The District Court summarily denied the government's motion *in limine* in a two-page order issued on October 7, 2010. The District Court did not explain its reasoning in an opinion. Rather, the District Court edited by hand the government's proposed order – striking through certain words and inserting others – before signing and filing it. The order provided that, "[a]t trial of Counts 3 and 4 in the indictment, the Court will advise and instruct the jury regarding each of the *disputed* elements of the charged offenses under 18 U.S.C. § 1951 and 18 U.S.C. § 924(c)." (App. 6.) (emphasis added). The order

16

further stated "that the government will not be permitted to present evidence regarding the April 19, 2007, robbery of Alfred's" because "proof regarding that robbery is not relevant to establish the identity of the defendant as a participant in the offenses on trial, and to prove his use and carrying of a gun in those offenses, and any prejudicial impact does substantially outweigh the probative value of the evidence." (App. 6.) On October 8, 2010, the government filed a notice of appeal and a petition for writ of mandamus. (App. 3-4.) Counsel for Brunson supports the granting of the petition for writ of mandamus.

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and this Court has the authority to issue a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *See In re Briscoe*, 448 F.3d 201, 211 (3d Cir. 2006). Furthermore, pursuant either to 28 U.S.C. § 1651(a) or our supervisory powers as enumerated in 28 U.S.C. § 2106, we have authority to order a case reassigned to another district court judge. *See Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 167-68 (3d Cir. 1993). And finally, 18 U.S.C. § 3731 provides us with jurisdiction to review the District Court's pretrial exclusion of evidence.

## III.  Discussion

With regrettable clarity, this case compels us to issue a writ of mandamus in order to correct the repeated errors of a judge in refusing to instruct the jury on all elements of the charged offenses.

17

We begin by recognizing that a writ of mandamus "constitutes a 'drastic remedy that a court should grant only in extraordinary circumstances in response to an act amounting to judicial usurpation of power[.]'" *In re Pressman-Gutman Co., Inc.*, 459 F.3d 383, 389 (3d Cir. 2006) (quoting *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 461 (3d Cir. 1996)).  The Supreme Court requires three conditions be met to uphold the issuance of a writ of mandamus:

> First, "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires," – a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy "the burden of showing that [his] right to issuance of the writ is 'clear and indisputable." Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Cheney v. U.S. Dist. Ct. D.C.*, 542 U.S. 367, 380-81 (2004) (internal citations omitted).

*See also In re Pressman-Gutman*, 459 F.3d at 399 (citing *Cheney*, 542 U.S. at 380-81).

Here, the government has "no other adequate means" to correct the District Court's unwillingness to charge the jury as to all elements of the relevant offenses, and the improper jury charge constitutes "clear and indisputable error." *Cheney*, 542 U.S. at 380-81.

It is evident that the government has exhausted its options.  As this Court has recognized, "the adoption of a clearly erroneous jury instruction that entails a high probability of failure of a prosecution – a failure the government could not then seek to remedy by appeal or otherwise – constitutes the kind of extraordinary situation in which we are empowered to issue the writ of mandamus." *United States v. Wexler*, 31 F.3d 117,

18

129 (3d Cir. 1994). The government sought to protect its interests by filing a motion *in limine* to require the District Court to provide instructions to the jury consistent with the Third Circuit Model Criminal Jury Instructions. The government took this step only after the District Court failed to charge the jury as to all elements of the relevant offenses in the second trial. The District Court's actions left the government between a rock and a hard place: any conviction obtained based on a flawed jury charge would be subject to reversal and retrial, while an acquittal after a flawed jury charge would be practically unassailable as a result of the Double Jeopardy Clause. *See Wexler*, 31 F.3d at 128.

Although in *Wexler* we acknowledged that our decision to grant the writ "does not authorize the use of mandamus whenever the government objects to criminal jury instructions," 31 F.3d at 128 n.16, mandamus is warranted in this case because the District Court made clear that it has no intention of providing complete and proper instructions to the jury. The risk of failure that could result from an improper jury instruction is magnified in the present case by the multiple trials the District Court has forced the government to conduct. Improper jury instructions that lead to convictions, and then to multiple reversals and retrials, would expose the government to the prejudices inherent in trying a case repeatedly and years after the fact. Thus, the intransigence of the District Court has left the government with no other adequate means to seek relief other than by writ of mandamus.

Furthermore, it is beyond dispute that the failure to instruct the jury on all elements of the charged offense is clear error. We are mindful that "[w]e may issue the writ 'only if the district court committed a 'clear error of law' at least approaching the

19

magnitude of an unauthorized exercise of judicial power, or a failure to use that power when there is a duty to do so.'" *In re Briscoe*, 448 F.3d at 216 (quoting *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 384 (3d Cir. 2002)). A court's failure to so instruct the jury unquestionably constitutes error. *See United States v. Haywood*, 363 F.3d 200, 207 (3d Cir. 2004) ("Although we have not adopted a per se rule, we have held that 'the omission of an essential element of an offense [in a jury instruction] ordinarily constitutes plain error.'" (quoting *United States v. Xavier*, 2 F.3d 1281, 1287 (3d Cir. 1993))). This is consistent with the Supreme Court's recognition of criminal defendant's entitlement under the Sixth Amendment "to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Apprendi v. New Jersey*, 530 U.S. 466, 476-77 (2000) (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)). Here, the prosecution and defense both agree that the District Court erred and threatens to err in a manner that merits the issuance of the writ.

During the second trial, the District Court did not instruct the jury as to all elements of the Hobbs Act robbery count (18 U.S.C. § 1951(a)) or the use of a firearm count (18 U.S.C. § 924(c)). (App. 514-18). The District Court did not even define the element of robbery contained in the § 1951(a) count, and almost entirely excluded the elements of the § 924(c) count. *See generally* Third Circuit Model Jury Instructions §§ 6.18.924B, 6.18.1951. Moreover, the District Court incorrectly suggested to the jury that its verdict had to be the same as to both counts, "[s]o that either the defendant is to be

20

found guilty of both counts or neither."[4] (App. 517.) Thus, in failing to instruct the jury on all elements of the charged counts and erroneously informing the jury that it had to find the same verdict for both counts, the District Court blundered.[5] The District Court's indication that it intends to repeat such error only compounds the problem. When the District Court denied the government's motion *in limine* requesting the court to read the full charge, the District Court instead provided that it would "instruct the jury regarding each element of the *disputed* elements of the charged offenses." (App. 6) (emphasis added.) In short, this course of conduct is clearly and indisputably incorrect.

At this stage of the analysis, with two prerequisites for the issuance of the writ already met, we still retain discretion to determine the appropriateness of the writ. Yet, it is without hesitation that we find the present case deserving of such an extraordinary measure. From the conduct of the court described above, we have grave concern about the ability of the judge to fairly rule on the various matters that have been and will be raised in this case. Accordingly, we will grant the petition for a writ of mandamus, and direct that the District Court be required to instruct the jury as to all elements of the charged offenses.

The government has moved for a reassignment of the case to another District Judge. Under different circumstances, we would remand this case to the same judge. In

---

[4] The District Court elaborated, "if you conclude that this defendant was one of the two robbers, then he would be guilty under both counts." (App. 517.) This still does not account for the possibility that the jury could find that the government failed to prove that Brunson possessed a firearm as he participated in the robbery.

[5] As it is not subject to appeal before us, we express no view as to whether this error merits reversal.

21

view, however, of the proceedings we have described above, we further exercise our authority to direct the Chief Judge of the Eastern District of Pennsylvania to reassign the case to another district court judge. *See Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 167-68 (3d Cir. 1993) ("We are authorized to order the reassignment of this case to another district court judge pursuant either to the All Writs Act, 28 U.S.C. § 1651(a), or 28 U.S.C. § 2106."). All indicators suggest that the District Court will refuse to alter its course, as it has been forced to confront its errors repeatedly, and in each instance, has run headlong into error again. In light of our decision to order reassignment of this case, we direct the newly selected district court judge to revisit the rulings that have been made on severance and on admission of evidence.

## IV.    Conclusion

For the reasons stated above, we will grant the petition for a writ of mandamus to instruct the jury as to all elements of the charged offenses and order that the case be reassigned to another District Judge.